# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

*In re* AJR

Docket No. 147522.  Argued March 6, 2014 (Calendar No. 9).  Decided June 25, 2014.

Petitioner-mother and respondent were married in 2003 and had one child, AJR, during their marriage.  They divorced in 2009.  The divorce judgment gave the parties joint legal custody of the child, gave physical custody to petitioner-mother, placed support obligations on respondent, and gave respondent reasonable visitation.  Petitioner-mother married petitioner-stepfather in 2010, and they lived together with AJR as a family.  In May 2012, petitioners filed a petition in the Kent Circuit Court to terminate respondent's parental rights so that petitioner-stepfather could adopt AJR under MCL 710.51(6), the stepparent adoption statute.  Petitioners alleged that respondent had failed to provide support or comply with a support order and had failed to visit or contact AJR for more than two years.  The court, Kathleen A. Feeney, J., granted the petition and terminated respondent's parental rights pursuant to MCL 710.51(6).  Respondent appealed, and the Court of Appeals, WILDER, P.J., and METER and RIORDAN, JJ., reversed, concluding that respondent's parental rights had been improperly terminated given that respondent and petitioner-mother had joint legal custody of AJR and MCL 710.51(6) only allows a court to terminate the rights of a parent who does not have legal custody.  The panel held that the statute requires that the petitioning parent be the parent having sole legal custody.  300 Mich App 597 (2013).  The Supreme Court granted petitioners leave to appeal.  495 Mich 875 (2013).

In a unanimous opinion by Justice ZAHRA, the Supreme Court *held*:

Stepparent adoption under MCL 750.51(6) is only available to the spouse of a parent with sole legal custody of the child, and the statute does not apply to situations in which the child's parents share joint legal custody.

1. MCL 710.51(6) provides for the termination of parental rights in the context of stepparent adoption, stating that if (1) the parents of a child are divorced (or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets certain conditions), (2) the parent having legal custody of the child subsequently marries, and (3) that parent's spouse petitions to adopt the child, the court may terminate the rights of the other parent if the other parent has for two or more years both failed or neglected to provide regular and substantial support for the child and regularly and substantially failed or neglected to visit, contact, or communicate with the child.  When the plain meaning of the statute is considered in the context of other provisions concerning stepparent adoption, it is clear that the Legislature

intended the phrase "parent having legal custody of the child" to refer to the parent with sole legal custody.

2. Asserting that when the stepparent adoption statute was added in 1980 the term "legal custody" in MCL 710.51(6) meant a legal right to physical custody, petitioners argued that petitioner-mother was the sole parent having legal custody of AJR because she was the parent with legally sanctioned physical custody of the child. Physical and legal custody were distinct concepts, allocable between parents, well before the Legislature added the stepparent adoption provision to the Michigan Adoption Code, however, and the joint custody rules established by the Legislature in the same session in which it added the stepparent adoption statute, as well as caselaw, directly contravene petitioners' assertion that custody is an indivisible concept.

3. Petitioners are not without a remedy. A parent who shares joint legal custody is free to seek modification of that custody arrangement under MCL 722.27 and may proceed with stepparent adoption under MCL 710.51(6) after securing sole legal custody of the child.

Affirmed.

©2014 State of Michigan

# Opinion

Chief Justice:           Justices:
Robert P. Young, Jr.     Michael F. Cavanagh
                         Stephen J. Markman
                         Mary Beth Kelly
                         Brian K. Zahra
                         Bridget M. McCormack
                         David F. Viviano

FILED June 25, 2014

STATE OF MICHIGAN

SUPREME COURT

In re AJR, Minor.

No. 147522

BEFORE THE ENTIRE BENCH

ZAHRA, J.

This case requires us to interpret the stepparent adoption statute, MCL 710.51(6), which allows the spouse of "the parent having legal custody of the child" to petition to adopt that child as long as the court orders the termination of the other parent's parental rights in a manner consistent with the criteria provided in MCL 710.51(6)(a) and (b). Applying the stepparent adoption statute to the instant case, the circuit court terminated respondent-father's parental rights to the minor child and also allowed petitioner-stepfather—who is married to petitioner-mother—to adopt the minor child. The Court of Appeals reversed, reasoning that because respondent and petitioner-mother shared joint legal custody of the child, petitioner-mother was not "*the* parent having legal custody of the child" as required by the stepparent adoption statute. We affirm the judgment of the Court of Appeals because when the role of the phrase "the parent having legal custody"

within the statutory scheme is considered, it is clear that the Legislature intended that phrase to refer to the parent with *sole* legal custody.

We also reject petitioners' argument, made for the first time on appeal before this Court, that petitioner-mother is the sole parent having legal custody of the child because she is the parent with legally sanctioned physical custody of the child. Michigan has long recognized that the concepts of legal custody and physical custody are distinct and allocable between parents. This has been so since before the enactment of MCL 710.51(6). Petitioner-mother has always been free to seek modification of the custody arrangement under MCL 722.27. If on remand petitioner-mother secures *sole* legal custody of the child, then petitioners may proceed with stepparent adoption under MCL 710.51(6).

## I. FACTS AND PROCEEDINGS

Respondent and petitioner-mother were married in 2003. The couple had one child during their marriage, AJR, but divorced in 2009. The divorce judgment awarded custody of AJR as follows:

> The parties shall share joint legal custody and [petitioner-mother] shall have the physical custody of the minor child . . . .

The divorce judgment also placed support obligations on respondent and provided that he would be given reasonable visitation with the child.

Petitioner-mother married petitioner-stepfather in June 2010. The couple lived together with AJR as a family. In May 2012, petitioners sought to terminate respondent's parental rights to allow petitioner-stepfather to adopt AJR. Petitioners filed a petition for stepparent adoption consistent with MCL 710.51(6)(a) and (b), alleging that "[t]he

2

noncustodial parent has failed to provide support or comply with a support order and failed to visit or contact the adoptee for a period of 2 years or more." They also filed a supplemental petition and affidavit to terminate the parental rights of the noncustodial parent, alleging that "[a] support order has been entered and the noncustodial parent has failed to substantially comply with the order for a period of two years or more before the petition for adoption was filed."

Following a two-day evidentiary hearing, the circuit court issued an opinion and order granting the petition and terminating respondent's parental rights pursuant to MCL 710.51(6). The circuit court found that respondent had substantially failed to provide support for the child for the two years preceding the filing of the petition and that respondent had substantially failed to visit or communicate with the child during the same period.

Respondent appealed by right in the Court of Appeals, which reversed the circuit court's order terminating his parental rights.[1] The Court of Appeals concluded that "because [respondent] and the mother had joint legal custody over the child and the statute only acts to terminate the rights of those parents who do not have legal custody, [respondent's] rights were improperly terminated."[2] The Court of Appeals held that the language "if *the* parent having legal custody of the child" in the statute must "be construed as requiring the parent initiating termination proceedings to be *the only parent*

---

[1] *In re AJR*, 300 Mich App 597; 834 NW2d 904 (2013).

[2] *Id*. at 600.

having legal custody."[3]   The Court of Appeals concluded that "[t]he rights of a parent who maintains joint legal custody are not properly terminated under MCL 710.51(6)."[4] The Court of Appeals observed that the articles "the" and "a" have different meanings and that the Legislature uses the term "the," rather than "a" or "an," to refer to something particular.[5]   The Court of Appeals also reasoned that, when possible, every word and phrase in a statutory provision must be given effect and that a court "should not ignore the omission of a term from one section of a statute when that term is used in another section of the statute."[6]   The Court of Appeals applied this principle, stating:

> Notably, the preceding subsection in the statute, MCL 710.51(5), uses the phrase "*a* parent having legal custody" to refer to whom that particular subsection applies.  Contrastingly, MCL 710.51(6) refers to "*the* parent having legal custody."  We presume that the Legislature intended to use the more general phrase "*a* parent" to refer to either of the child's parents in MCL 710.51(5) and that the omission of a general article in MCL 710.51(6) was intentional.[7]

---

[3] *Id*. at 602.

[4] *Id.*

[5] *Id*. at 602-603, citing *Paige v Sterling Hts*, 476 Mich 495, 509-510; 720 NW2d 219 (2006) (holding that "the" used in front of "proximate cause" in the statute before the Court referred to the *sole* proximate cause, thereby clarifying that the phrase "the proximate cause" exclusively contemplates *one* cause).

[6] *AJR*, 300 Mich App at 603.

[7] *Id*., citing *Farrington v Total Petroleum, Inc.*, 442 Mich 201, 210; 501 NW2d 76 (1993), and *Robinson v City of Lansing*, 486 Mich 1, 14 n 13; 782 NW2d 171 (2010) (stating that reviewing courts "must follow these distinctions between 'a' and 'the' because the Legislature has directed that '[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language' "), quoting MCL 8.3a (alteration in original).

4

It being undisputed that the divorce judgment provided that respondent and petitioner-mother would maintain joint legal custody of AJR, the Court of Appeals concluded that MCL 710.51(6), which requires that the petitioning parent be "*the* parent having legal custody," was inapplicable in the instant case.[8]

This Court granted leave to appeal to determine whether MCL 710.51(6) necessarily refers to "*the*" sole parent with legal custody and whether the term "legal custody" in the statute is synonymous with the concept of joint custody in § 6a(7)(b) of the Child Custody Act, MCL 722.26a(7)(b), under which the parents "share decision-making authority as to the important decisions affecting the welfare of the child," and also to explore the remedies, if any, available to the petitioners in this case if the Court of Appeals had not erred in interpreting MCL 710.51(6).[9]

## II.  STANDARD OF REVIEW

Whether the application of the stepparent adoption provision is limited to situations in which one parent has sole legal custody of the child is a question of statutory interpretation, which we review de novo.[10]

---

[8] *Id.* at 603-604.

[9] *In re AJR*, 495 Mich 875, 875-876 (2013).

[10] *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

### III. ANALYSIS

### A. INTERPRETING MCL 710.51(6)

As always, the objective of statutory interpretation "is to give effect to the Legislature's intent," and "[t]o ascertain that intent, this Court begins with the statute's language."[11] "When that language is unambiguous, no further judicial construction is required or permitted, because the Legislature is presumed to have intended the meaning it plainly expressed."[12] Moreover, "[w]hen interpreting a statute, courts must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute," which "requires courts to consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme."[13]

MCL 710.51(6) provides for the termination of parental rights in the context of stepparent adoption:

> (6) If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in [MCL 710.39], and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

---

[11] *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

[12] *Id.*

[13] *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 112; 845 NW2d 81 (2014) (quotation marks and citations omitted).

6

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

Accordingly, a court may only terminate parental rights under the stepparent adoption statute after concluding that both Subdivision (a) and (b) are satisfied, and also that the conditions provided in the preceding paragraph are satisfied.[14] The phrase "the parent having legal custody of the child" in the preceding paragraph of the stepparent adoption statute is the focus of this case.

Petitioners maintain that the Court of Appeals erred by interpreting the phrase "the parent having legal custody of the child" as necessarily referring to the sole parent with legal custody. We disagree because when the role of the phrase "the parent having legal custody" within the statutory scheme is considered, it is clear that the Legislature intended that phrase to refer to the parent with *sole* legal custody.

When interpreting the phrase "the parent having legal custody," we may consider the role of this phrase within the statutory scheme.[15] Under the Michigan Adoption Code, two provisions are particularly relevant when considering the process by which a stepparent may adopt a child: MCL 710.51 and MCL 710.43. There are two possible avenues pursuant to MCL 710.51 for a petitioning stepparent to adopt a child: adoption by parental consent under MCL 710.51(1) and the procedure for stepparent adoption

---

[14] *In re Hill*, 221 Mich App 683, 692; 562 NW 2d 254 (1997); see also *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 529; 672 NW2d 181 (2003) (reasoning that a proviso preceded by "if" "restricts the operative effect of statutory language to less than what its scope of operation would be otherwise").

[15] *Fradco*, 495 Mich at 112.

7

provided in MCL 710.51(6). MCL 710.43 provides the rules regarding the consent required under MCL 710.51(1) for adoption by parental consent, and MCL 710.43(7) specifically addresses the requirements for *stepparent* adoption by parental consent. MCL 710.43(7) provides:

> If the petitioner for adoption is married to *the parent having legal custody* of the child and that parent has joined the petitioner in filing the petition for adoption, that parent shall not execute a consent to the adoption. The consent of *the parent who does not have legal custody* of the child and whose parental rights have not been terminated shall be executed before the court may enter an order of adoption under [MCL 710.56]. [Emphasis added.]

Thus, in order for a petitioning stepparent to adopt a child by parental consent, the parent without legal custody must consent. By directly contrasting the phrases "the parent having legal custody" and "the parent who does *not* have legal custody," we conclude that the Legislature intended "the parent having legal custody" to mean the parent with *sole* legal custody.

Conversely, when consent from a parent without legal custody has not or cannot be obtained, MCL 710.51(6) provides an alternative procedure that allows the spouse of "the parent having legal custody of the child" to petition the court to involuntarily terminate the other parent's parental rights, if the statutory requirements have been satisfied, so that the child may then be adopted by the spouse of the parent with legal custody.

Importantly, the phrase "the parent having legal custody" appears in both MCL 710.51(6) and MCL 710.43(7). Because the Legislature chose to use the same phrase in MCL 710.51(6), which like MCL 710.43(7) also addresses stepparent adoption,

8

we conclude that the Legislature intended for that phrase to have the same meaning. In other words, because the Legislature expressly contrasted the phrase "the parent having legal custody" with the phrase "the parent who does not have legal custody" in MCL 710.43(7), the phrase "the parent having legal custody" within MCL 710.51(6) also was intended to be contrasted with the parent not having legal custody.[16] Therefore, the term "other parent" in MCL 710.51(6) refers to the parent not having legal custody pursuant to the distinction made in MCL 710.43(7). Moreover, the plain language of the statute does not otherwise indicate that the phrase "the parent having legal custody" should be interpreted differently in the context of MCL 710.51(6) than it is in MCL 710.43(7).[17] Therefore, when consent to stepparent adoption has not or cannot be obtained, petitioners must follow the statutory procedures to obtain sole legal custody before seeking termination of the respondent-parent's parental rights under MCL 710.51(6). For these reasons, we affirm the Court of Appeal's conclusion that the phrase "the parent having legal custody" in MCL 710.51(6) is inapplicable to situations involving joint legal custody.

---

[16] See *Robinson*, 486 Mich at 16 (stating that "the Legislature is not required to be overly repetitive in its choice of language"). Thus, it was not necessary for the Legislature to again directly contrast "the parent having legal custody" with "the parent who does not have legal custody" in MCL 710.51(6).

[17] Our conclusion that the Legislature intended the phrase "the parent having legal custody" to refer to the parent with *sole* legal custody is also consistent with prior case law recognizing that "the" and "a" have distinctive meanings where the Legislature has qualified the same word with the definite article "the" in one instance and the indefinite article "a" in another instance. See, e.g., *Robinson*, 486 Mich at 14-15.

9

Petitioners also invite this Court to reverse the Court of Appeals' judgment by resorting to the absurd-results doctrine of statutory interpretation. Specifically, petitioners argue that the statutory construction of the Court of Appeals is absurd because, under that construction, stepparent adoptions will never be possible when the other parent has joint legal custody, even if that parent has failed to regularly support or maintain contact with the child for the period provided in MCL 710.51(6). But there is nothing absurd about limiting the application of MCL 710.51(6) exclusively to parents having sole legal custody. Contrary to petitioners' concern, a parent who shares joint legal custody is free to seek modification of that custody arrangement under MCL 722.27 and may proceed with stepparent adoption under MCL 710.51(6) after securing sole legal custody of the child.[18] This result is akin to the scheme provided in the juvenile code, which in MCL 712A.19b(1) requires that a court "shall hold a hearing to determine if the parental rights to a child should be terminated and, if all parental rights to the child are terminated, the child placed in permanent custody of the court." The hearing required under MCL 712A.19b(1) is a separate proceeding from a review hearing under MCL 712A.19 or a permanency planning hearing under MCL 712A.19a. We do not question the Legislature's wisdom in enacting MCL 710.51(6). While it might be debatable whether the policy behind the statute is a good one, its plain application to the facts of this case does not produce an absurd result. Simply put, there is nothing absurd about

---

[18] See Part III-B of this opinion.

10

requiring a separate proceeding for the sake of modifying a preexisting custodial arrangement falling outside the scope of the stepparent adoption statute.[19]

Having concluded that the stepparent adoption statute applies only to those situations involving a sole legal custodian, we address petitioners' alternative argument, which they raise for the first time on appeal before this Court, that petitioner-mother *is* the sole parent having legal custody of AJR because she is *the* parent with "legally sanctioned physical custody of AJR." Petitioners premise this argument on the notion that when the stepparent adoption statute was added in 1980 the term "legal custody" in what ultimately became MCL 710.51(6)[20] meant "a legal right to physical custody." They argue that despite the fact that the divorce judgment granted joint legal custody to respondent and petitioner-mother, the divorce judgment also granted sole physical custody to petitioner-mother, and therefore, petitioner-mother is "the parent having legal custody" of AJR.

The term "legal custody" is not defined in the Michigan Adoption Code. An undefined term must be accorded its plain and ordinary meaning, except when the term

[19] To the extent that trial courts in this state have adopted a practice that allows for stepparent adoption in a manner that we now recognize as being contrary to the statute, this decision guides trial courts on the statute's proper scope and applicability. As this opinion makes clear, no longer ought the statute be employed when the parent initiating stepparent adoption proceedings is not the parent with sole legal custody of the child.

[20] See note 29 of this opinion.

11

has acquired a unique legal meaning, in which case the term " 'shall be construed and understood according to such peculiar and appropriate meaning.' "[21]

The term legal custody has acquired a unique legal meaning in Michigan law, and because of this, we interpret the term in accordance with its meaning in legal dictionaries and at common law.[22] The ninth edition of *Black's Law Dictionary* (published in 2009) defines the term "custody" in the family-law context as

> [t]he care, control, and maintenance of a child awarded by a court to a responsible adult. • Custody involves legal custody (decision-making authority) and physical custody (caregiving authority), and an award of custody [usually] grants both rights.[23]

This Court recently discussed the distinction between physical custody and legal custody, albeit under the Child Custody Act. In *Grange Ins Co of Mich v Lawrence* we noted that "[p]hysical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare."[24]

Neither this Court's decision in *Grange* nor the ninth edition of *Black's Law Dictionary* supports petitioners' interpretation of the term "legal custody." Nonetheless,

---

[21]*Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006), quoting MCL 8.3a.

[22] *Id*. at 439-440 (stating that "because 'mutual mistake of fact' is a legal term, resort to a legal dictionary to determine its meaning may also be helpful").

[23] *Black's Law Dictionary* (9th ed), p 441.

[24] *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013) (comparing MCL 722.26a(7)(a) (physical custody) with MCL 722.26a(7)(b) (legal custody)).

petitioners' interpretation is not without support. Our inquiry is the intent of the Legislature that in 1980 added the provision that ultimately became the statute before us,[25] MCL 710.51(6).

To determine the Legislature's intent in 1980, we refer to a contemporaneous legal dictionary. The prominent legal dictionary in use in 1980—the fifth edition of *Black's Law Dictionary* (published in 1979)—did not expressly acknowledge the distinction between "legal custody" and "physical custody" in the family-law context.[26] Rather, the fifth edition of *Black's Law Dictionary* defined "custody of children" as "[t]he care, control and maintenance of a child which may be awarded by a court to one of the parents as in a divorce or separation proceeding."[27] This definition—and the lack of a definition of "joint custody" in the fifth edition—reflect the reality that in 1980 it was not unusual for one parent to come away from a divorce with sole physical and legal custody of a child.[28]

---

[25] See note 29 of this opinion.

[26] The fifth edition of *Black's Law Dictionary* discussed the term "custody" as a broad concept, defining it as "[t]he care and control of a thing or person," and noted that "[t]he term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." *Black's Law Dictionary* (5th ed), p 347. "Legal custody" was defined, generally, in the fifth edition as "[r]estraint of or responsibility for a person according to law, such as a guardian's authority over the person or property, or both, of his ward. See also **Commitment; Custody; Guardian; Ward.**" *Id*. at 804.

[27] *Id*. at 347.

[28] *Black's Law Dictionary* (9th ed), p 442, defines "joint custody" in part as "[a]n arrangement by which both parents share the responsibility for and authority over the child at all times, although one parent may exercise primary physical custody."

13

Although the legal dictionary contemporaneous with the statute arguably supports petitioners' premise that "legal custody" included a right to physical custody in 1980, other factors militate against petitioners' interpretation. While the term "custody" was and is often used to refer to the complete bundle of custodial rights (i.e., both physical and legal custody), petitioners' theory relies on the meaning of "*legal* custody." Insight into the meaning of the term "legal custody" can be found by review of a related statute—MCL 722.26a—which was added during the same legislative session in which MCL 710.51(6) was added.[29] MCL 722.26a(7), a portion of the Child Custody Act concerning joint custody, provides:

> (7) As used in this section, "joint custody" means an order of the court in which 1 or both of the following is specified:
>
> (a) That the child shall reside alternately for specific periods with each of the parents.
>
> (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.

Thus, the Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child. Therefore, the joint-custody rules established by the Legislature in the same session in which the stepparent

---

[29] 1980 PA 509 added the stepparent adoption provision to MCL 710.51 as Subsection (5), effective January 26, 1981. It postdated MCL 722.26a, added by 1980 PA 434 (effective January 14, 1981), by almost two weeks. MCL 710.51 was subsequently amended by 1982 PA 72 to renumber Subsection (5) as Subsection (6) and add the language "or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in [MCL 710.39]."

14

adoption statute was added directly contravene petitioners' assertion that custody is an indivisible concept.

A survey of Michigan caselaw further confirms that physical custody and legal custody were distinct concepts, allocable between parents, well before 1980. In *Burkhardt v Burkhardt*, a case decided by this Court in 1938, the circuit court modified its custody order to state that "[the father] shall have the legal custody and control of said minor child . . . but that said child shall be in the actual care and custody of [third parties who had contracted to care for the child]. . . ."[30] In other words, the father in *Burkhardt* was awarded legal custody but not physical custody. Similarly, *Foxall v Foxall*, a 1947 decision of this Court, involved a 1946 custody order that also distinguished between legal custody and physical custody by providing that

> the legal custody of the children [would] remain in the friend of the court and their physical custody [would] remain with the father until the further order of the court, but upon the condition that the children remain at the home of their paternal grandmother under the present prevailing conditions.[31]

Additionally, *Lustig v Lustig*, a case decided by the Court of Appeals in 1980, involved a 1979 custody order that distinguished between legal custody and physical custody, providing "that legal custody of the minor children . . . be awarded jointly to the parents, plaintiff and defendant herein," and that "[p]hysical custody of [one of the children] was

---

[30] *Burkhardt v Burkhardt*, 286 Mich 526, 531; 282 NW 231 (1938) (quotation marks omitted).

[31] *Foxall v Foxall*, 319 Mich 461; 29 NW2d 912 (1947).

15

to alternate between plaintiff and defendant."[32]  Finally, in *Wilcox v Wilcox*, a case decided by the Court of Appeals in 1980, the Court expressly recognized the distinction between legal custody and physical custody, stating, "There is a difference between joint legal custody, which is concerned with making decisions which significantly affect the life of a child, and joint physical custody, which is concerned with the child living with the parent."[33]  Indeed, *Burkhardt*, *Foxall*, *Lustig*, and *Wilcox* illustrate that the concepts of legal custody and physical custody were divisible long before the enactment of MCL 710.51(6).[34]

We also find persuasive that the subsequent edition of *Black's Law Dictionary* (the sixth and centennial edition) published 11 years after the fifth edition and 9 years after the enactment of the stepparent adoption statute, defines "joint custody" as involving

> both parents sharing responsibility and authority with respect to the children; it may involve joint "legal" custody and joint "physical" custody. Such includes physical sharing of child in addition to both parents participating in decisions affecting child's life, *e.g.*, education, medical problems, recreation, etc . . . .[35]

---

[32] *Lustig v Lustig*, 99 Mich App 716, 719; 299 NW2d 375 (1980).

[33] *Wilcox v Wilcox*, 100 Mich App 75, 84; 298 NW2d 667 (1980), vacated and remanded 411 Mich 856 (1981) (vacated and remanded for reconsideration in light of 1980 PA 434, which added MCL 722.26a).

[34] See also *In re Brown*, 22 Mich App 459, 461; 177 NW2d 732 (1970) (discussing a custody order releasing "both physical and legal custody of the children" to the mother).

[35] *Black's Law Dictionary* (6th ed), p 385 (citation omitted).  Indeed, we note that the preface of this edition appreciates that "[n]early every area of the law has undergone change and development since publication of the Fifth Edition in 1979" and that "[t]he vocabulary of the law has likewise continued to change and expand to keep pace."  *Id*. at iii.

The definition of "joint legal custody" did not evolve into its contemporary understanding overnight, but it does seem quite clear, at least *a posteriori*, that many state courts during the 1980s either already recognized, as Michigan courts did, or increasingly began to embrace the above understanding of joint legal custody. Given that Michigan courts had acknowledged the concept of "joint legal custody" well before the enactment of MCL 722.26a(7), we find it entirely plausible that the Michigan Legislature had likewise embraced this understanding of joint legal custody when it added MCL 710.51(6).

In sum, petitioners simply fail to demonstrate that "legal custody" ever meant a legal right to physical custody or that the concepts of physical custody and legal custody are or ever were inextricably merged. Rather, pre-1980 evidence demonstrates that legal custody and physical custody were separate concepts allocable between parents long before the enactment of the stepparent adoption statute. Even before 1980, a parent could have had legal custody without having the legal right to physical custody. In light of these conclusions, and because the divorce judgment clearly awarded joint legal custody to respondent and petitioner-mother, petitioner-mother was not "the parent having legal custody," and therefore, the stepparent adoption statute did not apply in the instant case.

## B. REMEDY

In light of our holdings, we now address "what, if any, remedy is available to the petitioners in this case that is consistent with the general purposes of the Adoption Code, MCL 710.21a."[36] Under the Child Custody Act, the court may "[m]odify or amend its

---

[36] *AJR*, 495 Mich at 876.

previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . ."[37] Thus, petitioner-mother has always been free to seek modification of the custody arrangement so that she is the parent having sole legal custody of AJR. If she does so and her request is granted, petitioners may proceed with stepparent adoption under MCL 710.51(6).

Requiring such action is not unduly burdensome and is consistent with the general purposes of the Michigan Adoption Code, which exists not only to "safeguard and promote the best interests of each adoptee," but also to "protect the rights of all parties concerned."[38] This approach is also consistent with the general presumption followed by Michigan courts that, when a third party such as petitioner-stepfather is involved, a child's best interests are served by awarding custody to the natural parent or parents.[39] Consequently, petitioners have an avenue by which to pursue stepparent adoption, while at the same time respondent may defend his custodial rights to the extent provided by

---

[37] MCL 722.27(1)(c).

[38] See MCL 710.21a(b).

[39] See, e.g., *Hunter v Hunter*, 484 Mich 247, 279; 771 NW2d 694 (2009) (holding that "the established custodial presumption in MCL 722.27(1)(c) must yield to the parental presumption in MCL 722.25(1)"). MCL 722.25(1) provides:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

18

law.[40]  This is the legal framework provided by the Legislature; to the extent that petitioners argue that this remedy is unrealistic or practically unavailable, we disagree. However, we note that to the extent that petitioners are dissatisfied with the remedy available to them in light of their circumstances, they may seek recourse from the Legislature.

## IV. CONCLUSION

Because the express language of MCL 750.51(6) provides that stepparent adoption under the statute is only available to the spouse of "the parent having legal custody of the child," meaning the parent with sole legal custody, the statute does not apply to situations like the instant case in which the parents share joint legal custody of the child.  Therefore, we affirm the judgment of the Court of Appeals.  Petitioners are free to seek modification of the custody arrangement under MCL 722.27.  We do not retain jurisdiction.

> Brian K. Zahra
> Robert P. Young, Jr.
> Michael F. Cavanagh
> Stephen J. Markman
> Mary Beth Kelly
> Bridget M. McCormack
> David F. Viviano

---

[40] See MCL 722.27(1)(c) and MCR 3.977 (termination of parental rights).

19