*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHERINE MARSH,

        Plaintiff-Appellant,

v

BRETT HARNESS,

        Defendant-Appellee.

UNPUBLISHED
January 26, 2023

No. 362204
Oakland Circuit Court
LC No. 2021-508963-DC

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

In this child custody matter, plaintiff appeals as of right the judgment awarding the parties joint legal custody of their minor child, awarding her primary physical custody of the parties' minor child, and awarding defendant parenting time. We affirm.

## I. BACKGROUND

In 2015, the parties met and began a relationship when they both lived in Chicago, Illinois. In March 2020, or April 2020, the parties, who were cohabitating at the time, began working from home because of the COVID-19 pandemic. In approximately May 2020, they went to Bloomington, Indiana, to stay with defendant's family, but maintained their Chicago home. In late 2020, or early 2021, plaintiff discovered she was unexpectedly pregnant. According to plaintiff, defendant was not supportive of the pregnancy and repeatedly pressured her to get an abortion. Plaintiff ultimately went to Lake Orion, Michigan, to stay with a family member. Defendant joined plaintiff in Michigan shortly before the birth of their son in August 2021. Although their relationship was strained, the parties returned to Bloomington shortly after the minor child's birth. This proved to be an unsuitable arrangement because plaintiff felt isolated, controlled, and criticized by defendant and members of his family. In early September 2021, plaintiff and the minor child returned to Michigan, and moved into a home in Bloomfield Hills, Michigan. While plaintiff repeatedly offered defendant parenting time in her home, he declined the offers.

In September 2021, plaintiff filed a verified complaint, seeking sole legal and physical custody of the child. Plaintiff also moved the trial court to award defendant parenting time and

-1-

calculate child support in accordance with the Michigan Child Support Formula. Defendant answered the complaint, alleging it was in the minor child's best interests for the parties to share joint legal and physical custody and for the parties to have parenting time. Defendant agreed child support should be calculated and paid in accordance with the Michigan Child Support Formula.

On December 1, 2021, defendant moved the trial court to enter an interim order for joint legal and physical custody and parenting time. Defendant presented a proposed visitation schedule, which provided defendant would travel to Michigan three weekends each month for visitation. The visitation would take place in a hotel. Plaintiff opposed the motion, arguing she was entitled to an evidentiary hearing before the trial court entered a custody order. Plaintiff also claimed, because the minor child was exclusively breast-fed, defendant's proposed schedule was not in the child's best interests. Plaintiff also expressed concerns about the parties' ability to make decisions together because defendant had emotionally and psychologically abused her during their relationship. On December 28, 2021, the trial court entered an interim order, which granted defendant parenting time in Michigan for limited durations of time on alternating weekends. Defendant was ordered to "follow any feeding schedule/protocol provided by" plaintiff "based upon the advice of the minor child's pediatrician." The trial court later amended the December 2021 order, in relevant part, to permit defendant to also have contact with the minor child on a consistent basis via FaceTime.

In April 2022, the trial court held an evidentiary hearing on the issues of custody and parenting time. At the time of the hearing, plaintiff had recently purchased a home in Bloomfield Hills, and defendant was still residing with his family in Bloomington. Plaintiff's allegations of domestic violence, plaintiff's desire to continue directly breast-feeding the minor child, and the parties' mutual inability to facilitate a healthy parent-child relationship were discussed at length during the hearing. Plaintiff sought to call Jeffrie Cape, a purported expert in the dynamics of domestic violence, and Dr. Emily Rassel, the minor child's pediatrician, during the hearing. The trial court precluded the testimony of Cape, concluding it would not assist the trial court in making its custody determination. As will be discussed in more detail later in this opinion, plaintiff did not pursue calling Dr. Rassel as a witness in her case-in-chief. While plaintiff attempted to call Dr. Rassel to rebut testimony presented by defendant, the trial court held such testimony was improper and unnecessary. After hearing oral argument at the close of proofs, the trial court took the matter under advisement.

On May 5, 2022, the trial court issued an opinion and order. After concluding the established custodial environment existed solely with plaintiff, the trial court weighed the best-interests factors. The trial court found factors MCL 722.23(a), (b), (c), (g), and (h) favored both parties and that factors (d), (f), (j), and (k) favored neither party. The trial court found factor (i) was inapplicable and factor (e) favored plaintiff. The trial court did not make an explicit ruling as to (l). The trial court found clear and convincing evidence established a change of custody was in the minor child's best interests, noting the parties would likely be able to work together after participating in court-ordered therapy and other services. The trial court found it was in the minor child's best interests for the parties to share joint legal custody and for plaintiff to have primary physical custody. Defendant was granted parenting time, which would increase in three phases.

The trial court entered a judgment concerning custody and parenting time. Plaintiff filed the instant appeal, and later moved this Court to remand the matter to the trial court to create a

record of the testimony Dr. Rassel and Cape could have given if the trial court had not prevented them from testifying. Plaintiff filed offers of proof. Plaintiff's motion to remand was denied. *Marsh v Harness*, unpublished order of the Court of Appeals, entered September 8, 2022 (Docket No. 362204).

## II. THE TRIAL COURT'S REFUSAL TO ADMIT WITNESS TESTIMONY

### A. CAPE'S TESTIMONY

Plaintiff first argues the trial court abused its discretion by precluding Cape from testifying as an expert in the area of domestic violence. This Court generally reviews a trial court's "decision to exclude evidence for an abuse of discretion." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "A trial court abuses its discretion when its decision falls outside the range of principled and reasonable outcomes." *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 531; 937 NW2d 380 (2019).

"The requirements for the admission of expert testimony are: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to the common man." *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 215; 457 NW2d 42 (1990) (quotation marks and citation omitted). "[T]he critical inquiry with regard to expert testimony is whether such testimony will aid the factfinder in making the ultimate decision in the case." *Id*. (quotation marks and citations omitted).

The trial court concluded Cape's testimony would not aid the court in deciding the issue of custody. Assuming without deciding this was in error, we conclude the error was harmless. See MCR 2.613(A). While plaintiff argues hearing expert testimony on the dynamics of domestic violence could have changed the trial court's credibility determination, the trial court determined plaintiff's claims of domestic violence were least partially credible. Moreover, plaintiff does not explain or rationalize in a meaningful manner how the trial court's alleged error impacted its decision on the issues of custody and parenting time. Plaintiff's offer of proof with respect to Cape simply provides Cape

> would . . . provide potential solutions and alternatives for the court to avoid being used as leverage or as a mechanism to control someone in the future. She was prepared to offer insights into ways to draft provisions and orders to avoid potential pitfalls that could be avoided when an abuser attempts to use the court system to further his abusive tendencies.

However, the trial court put multiple safeguards in place. Specifically, the trial court ordered defendant to complete a domestic violence class and to only communicate with plaintiff through Our Family Wizard so their communications could be monitored. In the event defendant failed to "demonstrate[ ] appropriate progress" and "provide proof of course progression through Our Family Wizard," defendant would be unable to progress to Phase Two of the parenting time schedule. The parties were also ordered to participate in therapy together and to complete a Love and Logic parenting course. Additionally, as noted by the trial court, defendant's family appears to be the source of a great deal of tension between the parties. To avoid any issues, defendant was

not permitted to have family members present at parenting time exchanges. Given these facts, we conclude plaintiff's right to substantial justice was not affected by the trial court's alleged error. Indeed, the trial court implemented multiple safeguards and ordered completion of certain services in an effort to ensure the parties were able to safely and effectively co-parent the minor child in a manner that would serve his best interests, which is what the trial court was required to do. See *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) ("[a]bove all, custody disputes are to be resolved in the child's best interests").

### B. DR. RASSEL'S TESTIMONY DURING PLAINTIFF'S CASE-IN-CHIEF

Plaintiff argues the trial court abused its discretion by precluding Dr. Rassel from testifying in her case-in-chief. We conclude this issue is waived. "Waiver is an intentional and voluntary relinquishment of a known right. . . ." *Walters v Nadell*, 481 Mich 377, 384 n 14; 751 NW2d 431 (2008) (quotation marks and citation omitted). Waiver occurs when a party stipulates to a matter before the trial court. *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014).

After plaintiff expressed an intent to call Dr. Rassel to testify, the trial court asked plaintiff's purpose for calling Dr. Rassel when the minor child's medical records had already been admitted into evidence. Plaintiff responded: "I don't know that I need to call her. . . . Uh, unless she wants to testify as to the conduct of the last session." Thus, plaintiff essentially agreed with the trial court that Dr. Rassel's testimony was not necessary in plaintiff's case-in-chief. Importantly, plaintiff did not attempt to call Dr. Rassel as a witness during her case-in-chief again. Because plaintiff knowingly and intentionally decided not to call Dr. Rassel as a witness in her case-in-chief, her argument concerning Dr. Rassel's purported inability to testify during her case-in-chief is waived. See *id*. We will thus not consider the argument. See *Hodge*, 303 Mich App at 556 ("A party who waives a right is precluded from seeking appellate review. . . ."). Indeed, reviewing the issue would permit plaintiff to harbor error as an appellate parachute. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

### C. DR. RASSEL'S TESTIMONY DURING REBUTTAL

Plaintiff argues the trial court abused its discretion by precluding Dr. Rassel from testifying after defendant testified on cross-examination he was "not particularly" satisfied with Dr. Rassel as a pediatrician. According to plaintiff, it would have been helpful for the trial court to hear Dr. Rassel's testimony. However, plaintiff does not explain or rationalize why it would have been helpful for the trial court to hear this testimony on rebuttal. Importantly, a party whose evidence is excluded by the trial court must make an offer of proof to preserve the issue for appeal. *Detroit v Detroit Plaza Ltd Pship*, 273 Mich App 260, 291; 730 NW2d 523 (2006). While plaintiff filed an offer of proof with this Court, Dr. Rassel's offer of proof does not address what testimony she would have provided on rebuttal. Thus, it is not possible to tell if the trial court's decision to preclude Dr. Rassel from providing rebuttal testimony was an abuse of discretion. See *id*. Plaintiff is therefore not entitled to relief. See *id*.

### III. CUSTODY AND PARENTING TIME

Plaintiff next argues the trial court improperly concluded joint legal custody was in the minor child's best interests and the trial court's decision concerning parenting time was erroneous. We disagree.

## A. STANDARDS OF REVIEW

A "child custody dispute" means "any matter that relates to the custody of a child from the time the issue of custody arises until the child reaches the age of majority." *Phillips v Jordan*, 241 Mich App 17, 22 n 1; 614 NW2d 183 (2000). In child custody cases, we apply three standards of review. *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Id.* at 644-645 (quotation marks and citations omitted).]

This Court defers to the trial court concerning issues of credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

## B. JOINT LEGAL CUSTODY

"[T]he Child Custody Act is the exclusive means of pursuing child custody rights." *Aichele v Hodge*, 259 Mich App 146, 153; 673 NW2d 452 (2003) (quotation marks and citation omitted). "[T]he Child Custody Act draws a distinction between physical custody and legal custody. . . ." *Merecki*, 336 Mich App at 647. "Thus, the Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014), superseded in part by statute as stated in *In re AGD*, 327 Mich App 332, 342; 933 NW2d 751 (2019). "Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511, 835 NW2d 363 (2013) (quotation marks omitted).

"Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020).

When a modification would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest. If the proposed change does not change the custodial environment, however, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010) (citations omitted).]

The clear and convincing evidence "standard also applies when there is an established custodial environment with both parents." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001).

"[W]hether a custodial environment has been established is an intense factual inquiry." *Id.* An established custodial environment is one in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

The trial court found the established custodial environment existed solely with plaintiff, who does not dispute this finding on appeal. Therefore, the trial court properly determined plaintiff was required to establish by a preponderance of the evidence that granting her sole legal custody of the minor child was in the child's best interests, and defendant was required to establish by clear and convincing evidence that granting joint legal custody was in the minor child's best interests. See *Shade*, 291 Mich App at 23.

After the trial court properly identified the proper burden of proof, the court was required to consider the best-interest factors enumerated in MCL 722.23. *Lieberman v Orr*, 319 Mich App 68, 84; 900 NW2d 130 (2017). The best-interest factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

"A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts "are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id.* (quotation marks and citation omitted). Plaintiff challenges the trial court's findings as to factors (b), (c), (d), (h), (j), and (k).

With respect to factor (b), defendant testified he and the minor child enjoy spending time together. They make each other laugh, listen to music together, and dance together. Additionally, plaintiff acknowledged during her deposition that she observed defendant holding the minor child in a loving manner. While plaintiff is correct that defendant had spent a limited amount of time alone with the minor child at the time the May 2022 opinion and order was entered, it does not appear defendant brought family members to parenting times because defendant did not want to provide care to the minor child. Rather, defendant testified "everyone wants to see the baby" and bond with him. The trial court's findings that factor (b) favored both parties is not against the great weight of the evidence.

With respect to factor (c), plaintiff argues this factor should have weighed in her favor. However, contrary to plaintiff's arguments on appeal, defendant demonstrated the capacity to provide for the minor child. Indeed, defendant demonstrated love for the minor child and a willingness and desire to provide for him. Defendant testified he brought diapers, toys, and clothing to parenting time. Although plaintiff is correct defendant had not paid child support, hospital bills, or other bills associated with the minor child at the time of the hearing, his testimony supports he had the disposition to provide the minor child with food, clothing, medical care, or other remedial care. The trial court clearly found this testimony to be credible. Additionally, as noted by the trial court, plaintiff's decision to exclusively breast-feed the minor child precluded defendant from providing him with food. The trial court's finding factor (c) favored both parties was not against the great weight of the evidence.

With respect to factor (d), the trial court found this factor favored neither party, given the "gratuitous nature" of defendant's living situation in Bloomington, his uncertainty about his future

living situation, and plaintiff's "recent" purchase of her home. The trial court noted it was unclear from the record where the minor child and plaintiff lived between September 2021, and February 2022, when she purchased a home in Bloomfield Hills. According to plaintiff, the trial court's finding was against the great weight of the evidence because she testified she had lived in the Bloomfield Hills home for eight months at the time of the evidentiary hearing.

While plaintiff testified at the hearing she had lived at the Bloomfield Hills home for "[a]bout eight months" and purchased the home in February 2022, the record is devoid of evidence concerning the stability of plaintiff's housing situation before she purchased the home in February 2022. It is unclear whether plaintiff executed a lease, or had any other legal rights to the Bloomfield Hills home for the first five months she lived there. Thus, while it is undisputed plaintiff had continuously and almost exclusively provided for the minor child's care throughout his young life and that the care had been satisfactory, the record only supports plaintiff's housing became stable in the weeks leading up to the hearing. The trial court's finding factor (d) favored neither party was not against the great weight of the evidence.

With respect to factor (h), plaintiff argues this factor should have favored her because the minor child's "entire community record is in Michigan, and he is only meeting all of his milestones because of her." Although the record supports plaintiff was raising the minor child in a strong community setting, the record nonetheless supports defendant was attempting to do the same. Indeed, defendant brought family members to parenting time visitations in Michigan to bond with the minor child. The trial court's finding factor (h) favored both parties was not against the great weight of the evidence.

With respect to factor (j), while plaintiff testified extensively about defendant's controlling nature and the trial court appears to have found at least some of this testimony credible, the record evidence also supports plaintiff is controlling and unwilling to include defendant in important decisions. Indeed, as noted by the trial court, testimony supported plaintiff changed the minor child's pediatrician without requesting input or approval from defendant and unilaterally enrolled the minor child in swimming lessons. Plaintiff also referred to the minor child by his middle name without consulting defendant. Evidence also supports plaintiff disparaged defendant in the minor child's presence by calling defendant names. Perhaps most concerning is the fact that plaintiff hired a private investigator to follow defendant in an attempt to discern defendant's hotel room number during defendant's first parenting time outside of plaintiff's home. Defendant testified he was frightened and that the man's presence impacted his ability to enjoy his parenting time with the minor child. Plaintiff also unilaterally made decisions concerning the minor child's diet and refused to permit defendant to feed the minor child through a bottle even though she was informed by medical personnel this would not harm the minor child. While evidence was presented that direct breast-feeding is ideal, the fact of the matter remains plaintiff does not appear to have taken into consideration the minor child's need to bond with defendant. The trial court's finding factor (j) did not favor either party was not against the great weight of the evidence.

With respect to factor (k), the trial court found the factor did not favor either party. Plaintiff argues this was against the great weight of the evidence and inconsistent with the trial court's decision to implement domestic violence safeguards. We disagree. It appears the trial court struggled to discern the extent of the alleged emotional and psychological abuse given the parties' conflicting testimony. While the trial court found portions of plaintiff's testimony to be credible,

the trial court noted plaintiff's repeated requests for defendant to join her and the minor child in Michigan undercut her allegations. The trial court also found it difficult to "strip away the involvement of the non-parties," and concluded "both sides could have made better choices in hindsight." While the trial court did not "disregard" plaintiff's "allegations in their entirety," the trial court also noted the parties lived in different states, had very little physical contact with each other, and were ordered to communicate through Our Family Wizard. The trial court found it was proper to "impose additional domestic violence safeguards on the parties to ensure an appropriate co-parenting relationship." Given the trial court's findings, the trial court's finding that factor (k) did not favor either party was not against the great weight of the evidence, and the trial court's findings were not inconsistent.

With respect to the trial court's decision to award the parties joint legal custody, "[a]bove all, custody disputes are to be resolved in the child's best interests." *Eldred*, 246 Mich App at 150. The trial court "shall determine whether joint custody is in the best interest of the child" by addressing the statutory best-interest factors in MCL 722.23 and whether "the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). "If two equally capable parents whose . . . relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted).

The trial court considered the best-interest factors and the facts and circumstances of this case, and the trial court's decision to award the parties joint legal custody was not an abuse of discretion. The parties testified about their love for the minor child and their willingness to work with the other party to serve his best interests. While the trial court found the parties' testimony that they were willing to work together was not credible, the evidence does not support that the parties' relationship was "irreconcilably broken down" to the point they would be "unable to cooperate and to agree generally concerning important decisions affecting the welfare of" the minor child.

This is not a case where the parties have a long-standing acrimonious relationship where they constantly disagreed about important decisions concerning the minor child and where joint custody would cause the minor child harm. As found by the trial court, it appears the parties will be able to work together in the future if they benefit from the services ordered by the trial court and they prevent outside parties from interfering with their parenting relationship. Given the record evidence, plaintiff failed to establish by a preponderance of the evidence it was in the minor child's best interests to grant sole legal custody to plaintiff, and defendant established by clear and convincing evidence joint legal custody was in the minor child's best interests.

While the trial court found defendant could not meet his burden of establishing by clear and convincing evidence that joint physical custody was in the minor child's best interests, physical custody and legal custody are two distinct forms of custody under the Child Custody Act. *Merecki*, 336 Mich App at 647. It reasonably follows trial courts are required to make separate inquiries into what is the child's best interests as to each form of custody. The trial court in this case did so in a detailed manner, concluding defendant's lack of stable housing and uncertainty about his work schedule and permanent living arrangements rendered joint physical custody

improper. Plaintiff's attempts to argue the trial court's findings as to legal custody and physical custody conflict are not persuasive.

## C. PARENTING TIME

"The purposes of the Child Custody Act, MCL 722.21 *et seq*., are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted). A trial court may modify or amend its previous judgments or orders "for proper cause shown or because of change of circumstances. . . ." MCL 722.27(1)(c). "[A] showing of proper cause or change of circumstances is required to modify a parenting time order[.]" *Shade*, 291 Mich App at 22-23. In this case, contrary to defendant's arguments on appeal, he was required to establish proper cause or a change of circumstances because the trial court entered the December 2021 order, which outlined his parenting-time schedule.

The standards for this threshold showing differ depending on whether the moving party seeks to change custody or to modify parenting time. *Lieberman*, 319 Mich App at 81. More specifically:

> [*Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003),] addresses the requisite standards for showing proper cause or a change of circumstances relative to requests to modify child custody. [*Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010),] addresses the requisite standards for showing proper cause or a change in circumstances relative to requests to modify parenting time. Notably, when a proposed change of circumstances will affect a child's established custodial environment, the applicable legal framework for analyzing the matter is that set forth in *Vodvarka*. [*Id*. (citations omitted).]

In determining whether a proposed change to parenting time would alter an established custodial environment, an important consideration is to what extent the proposed change will decrease a parent's time with the child. *Lieberman*, 319 Mich App at 89-90. "Whereas minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, significant changes do." *Id*. (citations omitted). In other words, "a substantial modification of parenting time" that significantly reduces the amount of time that a parent with an established custodial environment spends with a child would alter the established custodial environment, and such a proposed change must be considered under *Vodvarka*. *Id*. at 89-91.

The trial court found defendant's proposed parenting-time schedule would change the established custodial environment at the point when defendant's overnight visitations "would expand from 22 to 84 overnights." The trial court applied the framework outlined in *Vodvarka*, and found defendant had established proper cause "given the desire to establish continuity for [the minor child] in light of the tumultuous early months of his short life under best interest factor (d). . . ." Plaintiff argues this was in error.

"[A] proper cause or change in circumstance is a significant circumstance regarding one or more of the best-interest factors that has the potential for a significant effect on the well-being of

the child or children whose custody is at issue." *Merecki*, 336 Mich App at 646 (footnote omitted). "The movant bears the burden to prove by a preponderance of the evidence the existence of an appropriate ground[.]" *Id*. (quotation marks and citation omitted; alteration in original). As relevant to this appeal,

> to establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors. [*Vodvarka*, 259 Mich App at 512.]

Plaintiff first argues the trial court committed error because, to establish proper cause, a change must have occurred between the entry of the December 2021 order and the May 5, 2022 opinion and order. Plaintiff argues the only change that occurred was plaintiff purchasing the Bloomfield Hills home. However, as stated in *Vodvarka*, 259 Mich App at 515:

> The phrase "proper cause" is not by the words themselves tied to a change in events as is "change of circumstances." Rather, proper cause is geared more toward the significance of the facts or events or, as stated earlier, the appropriateness of the grounds offered. However, we believe a party would be hard-pressed to come to court after a custody order was entered and argue that an event of which they were aware (or could have been aware of) before the entry of the order is thereafter significant enough to constitute proper cause to revisit the order. However, there can be such situations.

This case provides such an example. At the time of the entry of the December 2021 order, defendant had not seen the minor child since September 8, 2021. The order was an interim order and was entered without a hearing. Thus, this is not a case where the trial court was sufficiently apprised of facts regarding which possible custodial arrangement would be in the minor child's best interests when the December 2021 order was entered. See *Vodvarka*, 259 Mich App at 515-516. Rather, it appears the order was entered so defendant could resume bonding with the minor child, who was only four months old at the time. Evidence and pleadings support the interim order was necessary because the parties were unable to reach a compromise concerning the parameters of defendant's visits. If defendant had not requested the interim order and had instead insisted on an evidentiary hearing, additional months could have passed before defendant was able to see the minor child, at which point their bond would have been further eroded or been reduced to nothing. Under the circumstances of this case, it was not erroneous for the trial court to consider events that occurred before the entry of the December 2021 order.

Next, plaintiff argues the "instability cited prior to entry of the December 2021 order" did "not rise to the extremely high level required by the *Vodvarka* threshold in order for the Trial Court to change [the minor child's] established custodial environment." According to plaintiff, the facts relied upon by the trial court merely constitute "a normal life change. . . ." While, "in order to establish a 'change of circumstances,' . . . the evidence must demonstrate something more than the

-11-

normal life changes," *Vodvarka*, 259 Mich App at 513-514, "proper cause" has its own definition that is distinct from the definition of "change of circumstances," *id*. at 510-514. We conclude the trial court's finding proper cause existed was not against the great weight of the evidence.

As already stated, the trial court found proper cause existed because the minor child's young life had been marked by instability, which relates to best-interest factor (d). This was supported by the evidence. Indeed, after the minor child was born in Michigan, the parties traveled to Indiana with the minor child. When the minor child was one month old, plaintiff returned to Michigan with the child. While the record supports plaintiff lived in the Bloomfield Hills home with the minor child after they returned to Michigan, it is unclear whether plaintiff had legal rights to the Bloomfield Hills home. The minor child did not see defendant for more than three months because the parties were unable to work out a parenting time schedule. It was not until the trial court entered an interim order, without the benefit of an evidentiary hearing, that defendant was able to see the minor child. Additionally, plaintiff did not purchase the Bloomfield Hills home until February 14, 2022, which was two months before the hearing was held. These facts support it was appropriate for the trial court to take legal action, i.e., determine custody through a review of the statutory best-interest factors. Indeed, the instability in the minor child's young life undoubtedly had "a significant effect on [his] well-being."

Next, plaintiff argues the trial court effectively granted defendant joint physical custody by virtue of the parenting time order after the trial court held defendant could not establish he was entitled to joint physical custody by clear and convincing evidence. We disagree.

After concluding proper cause existed, the trial court considered the best-interest factors and the parenting-time factors. The trial court found neither party's proposed parenting time schedule was in the minor child's best interests. The trial court then created a detailed three-phase schedule. Phase One, which would last from entry of judgment through the minor child's first birthday, granted defendant a maximum of 34 hours of parenting time every four weeks. Phase Two, which would begin on the minor child's first birthday if defendant completed or substantially completed the domestic violence course and Love and Logic course, granted defendant a maximum of 92 hours of parenting time every four weeks. Phase Three, which was to begin when the minor child turned 18 months old, granted defendant nine overnight parenting times every four weeks. Defendant was ordered to return the minor child to plaintiff by noon on the second Sunday of the month, which was during the Michigan parenting time. With respect to the Indiana parenting time, the parties were ordered to arrange a time and a place to meet on the third Friday of the month and the fourth Friday of the month so they could exchange the minor child. The summer parenting time would not begin until either 2024, or when the minor child was enrolled in school.

We fail to see how the trial court's parenting-time order effectively granted defendant joint physical custody. Indeed, even under Phase Three, the minor child will spend a vast majority of his time in plaintiff's home and will continue to primarily receive physical care and supervision from plaintiff. See *Lieberman*, 319 Mich App at 85 ("an award of physical custody primarily or solely to one party typically entails a situation in which the children receive physical care and supervision primarily from the parent awarded that status"). Consequently, the trial court's ruling with respect to parenting time was not inconsistent with the trial court's finding defendant had not established by clear and convincing evidence joint physical custody was in the minor child's best interests.

Next, plaintiff argues the trial court improperly determined her proposed parenting time schedule was not in the minor child's best interests. We disagree.

"Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1). "Visitation shall be granted if it is in the best interests of the child and in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent." *Booth v Booth*, 194 Mich App 284, 292; 486 NW2d 116 (1992).

As noted by the trial court, at the time of the hearing, defendant "exercised a maximum of 15 [hours of] parenting time per alternating weekend (three on Friday, six on Saturday, and six on Sunday)." The trial court then noted:

> [Plaintiff's] plan adds a total of three hours of [defendant's] parenting time for the next two years (on Wednesday afternoons), provides [defendant] with a continuous block of time (six hours) rather than two three-hour periods, but makes no other changes.

We fail to see how plaintiff's plan would promote a strong relationship between defendant and the minor child. Additionally, "[a] trial court may use both the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a(6) when deciding whether to award parenting time." *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013) (alteration and quotation marks omitted). In this case, the trial court considered the best-interest factors and the factors listed in the parenting time statute when crafting the parenting-time schedule. Plaintiff does not challenge the trial court's findings under the parenting time statute and does not specifically challenge any of the best-interest factors. Rather, plaintiff essentially disagrees with the trial court's ruling because plaintiff wants to directly breast-feed the minor child until he is 24 months old. However, "[a]bove all, custody disputes are to be resolved in the child's best interests." *Eldred*, 246 Mich App at 150. The trial court's changes to the parenting-time schedule were necessary to accommodate the minor child's best interests and promote a strong relationship with defendant.

In sum, the trial court did not abuse its discretion by awarding joint legal custody and by entering the parenting-time order. In so holding, we deny defendant's request for sanctions because plaintiff's arguments on appeal support the conclusion this appeal, was not taken for purposes of hindrance or delay, but instead was a sincere attempt to challenge the trial court's custody and parenting time determinations. See MCR 7.216(C)(1)(a). Additionally, we decline to award attorney fees under MCR 1.109(E)(6) because plaintiff's brief on appeal is "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law[.]" See MCR 1.109(E)(5)(b). There is also no indication plaintiff's brief on appeal was filed "for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation." See MCR 1.109(E)(5)(c).

Affirmed.[1]

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto

---

[1] Given this holding, we need not consider plaintiff's argument that remand before a different judge is necessary. See *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005).