*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARIYA BARRETTA,

        Plaintiff/Counterdefendant-Appellant,

v

MAKSIM ZHITKOV,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
August 24, 2023

Nos. 364921 and 365078
Oakland Circuit Court
LC No. 2016-847920-DM

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

In Docket No. 364921, Plaintiff/Counterdefendant, Mariya Barretta, appeals as of right the trial court's January 24, 2023 order which suspended plaintiff's parenting time with her minor child, AZ. The January 24, 2023 order also prohibited plaintiff from contacting AZ. In Docket No. 365078, plaintiff appeals by delayed leave granted[1] four orders, one of which is the January 24, 2023 order. The three remaining orders are the trial court's (1) December 19, 2022 order that temporarily suspended plaintiff's parenting time and ordered her to immediately return AZ to the care of Defendant-Counterplaintiff, Maksim Zhitkov; (2) a January 11, 2023 order that granted plaintiff "limited and supervised" parenting time with AZ; and (3) a January 13, 2023 order that suspended plaintiff's parenting time and ordered her not to have contact with AZ. Because the trial court erred in various respects, we vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

## I. BACKGROUND

---

[1] *Barreta v Zhitkov*, unpublished order of the Court of Appeals, entered March 30, 2022 (Docket No. 365078).

The parties are the parents of AZ, who was born during the parties' marriage. A May 16, 2018 judgment of divorce granted the parties joint legal and physical custody of AZ.[2] The parties were granted "week on/week off parenting time."[3] After entry of the judgment of divorce, the parties filed various motions concerning custody and parenting time. Each party continuously alleged the other engaged in wrongful conduct and both the number and severity of the allegations continued to escalate throughout the proceedings. AZ began to develop significant mental health issues. In July 2022, the trial court appointed a guardian ad litem (GAL).

On December 15, 2022, defendant moved the trial court to immediately suspend plaintiff's parenting time. In relevant part, defendant alleged: (1) AZ missed or was tardy to school during plaintiff's parenting time;[4] (2) plaintiff was suffering from mental health issues; (3) plaintiff was attempting to alienate AZ from defendant, in part, by convincing him to fabricate sexual assault allegations; and (4) plaintiff failed to take AZ to certain appointments to address his mental health issues. On December 16, 2022, the trial court entered an order, finding it was in AZ's best interests to temporarily suspend plaintiff's parenting time.[5] The trial court held it would hear oral arguments on December 21, 2022.

Plaintiff moved to have the December 16, 2022 order immediately set aside, arguing it was not in AZ's best interests to suspend her parenting time and place AZ in defendant's sole care. According to plaintiff, AZ had alleged defendant and defendant's son from a previous relationship, IZ, had sexually assaulted him. Plaintiff also alleged defendant failed to take AZ's mental health issues seriously even though they involved suicidal ideation, anxiety, and depression. In a December 19, 2022 order, the trial court denied the motion and again held plaintiff's parenting time was temporarily suspended pending the December 21, 2022 hearing. Plaintiff was ordered

---

[2] This case involves issues regarding plaintiff's physical custody. Since *Vodvarka v Grasmeyer*, 249 Mich App 499, 509-514; 675 NW2d 847 (2003), this Court applies the standard for evaluating "custody" decisions without distinguishing between physical and legal custody even though the Child Custody Act draws a distinction between them. *Merecki v Merecki*, 336 Mich app 639, 647; 971 NW2d 659 (2021).

[3] Plaintiff filed for divorce on November 14, 2016; after defendant's son from another marriage (IZ) threatened then five-year-old AZ with a knife. IZ pled guilty to the assault as a minor. The 18 month battle between the filing and the entry of the consent order regarding custody (trial was held on child and spousal support and the division of assets and debts) was rife with allegations of physical and sexual abuse of AZ by IZ, a personal protection order against defendant, CPS investigations, physical violence, motions to suspend parenting time, failures to provide the child for parenting time, removing and retaining property of the other party and financial gamesmanship to deprive access to financial resources. Unfortunately, entry of the divorce judgment on May 16, 2018 did not put these issues to rest.

[4] Without notice to defendant, plaintiff moved away from a home in Clarkston located close to defendant's home and into a home in Grosse Pointe Park, 50 miles away from the child's elementary school.

[5] Plaintiff does not challenge this order on appeal.

to immediately place AZ in defendant's care. Thereafter, AZ was admitted to a psychiatric hospital.

On December 21, 2022, the referee heard oral arguments before the parties and the referee appeared before the trial court. The GAL recommended plaintiff be granted supervised parenting time with AZ, who was still in treatment for his mental health issues, including after his release. During the 15-minute hearing, however, the GAL presented no evidence or explanation regarding why supervised parenting time was necessary. There was a delay in entering an order after the December 21, 2022 hearing.[6] In the meantime, AZ was released from the hospital, he returned to defendant's care, and plaintiff applied for and received an ex parte Personal Protection Order (PPO) against defendant on January 3, 2023.[7] On January 11, 2023, the trial court entered an order. In relevant part, it stated:

> 1. An Order of Reference shall be entered separate from this order referring the issues of custody and parenting time to the Friend of the Court [(FOC)] for an evidentiary hearing;[8]
>
> 2. Until further Order of the Court, [plaintiff's] parenting time shall be limited and supervised. If the parties are unable to agree on a supervisor and the parameters of the supervised parenting time, then either party may file a motion;
>
> 3. [Plaintiff] shall be permitted to have limited, supervised parenting time at [the] psychiatric hospital so long as the hospital is able to provide a supervisor. . . .
>
> 4. Father's parenting time shall be supervised by his father so long as there is a CPS safety plan for supervised parenting time[;]
>
> 5. All other orders not in direct conflict [with] this order shall remain in full force and effect.

Plaintiff immediately moved the trial court to lift the supervision requirement for her parenting time and "restore her parenting time." Plaintiff also moved the trial court to order that defendant was limited to supervised parenting time, arguing defendant failed to address AZ's mental health needs after AZ was released from inpatient treatment.[9] The next day, on January

---

[6] There was a delay in the trial court entering an order after the December 21, 2022 hearing because the parties disagreed on the language of the proposed order. Specifically, plaintiff submitted a proposed order under the seven-day rule, MCR 2.602(B)(3), and defendant objected. The hearing on the objection was set for January 11, 2022.

[7] This was the second PPO that plaintiff sought against defendant.

[8] There is no indication in the lower court register of actions that an order of reference was entered or that the FOC scheduled an evidentiary hearing on the issues of custody and parenting time.

[9] Defendant took AZ to Costa Rica after AZ was released from Pine Rest without providing notice to plaintiff.

12, 2023, plaintiff moved the trial court to immediately suspend defendant's parenting time because AZ was hospitalized on the evening of January 11, 2023, while in defendant's care, alleging she was the only parent equipped to ensure AZ received the necessary treatment. Defendant opposed plaintiff's motions, arguing plaintiff had defied the trial court's orders suspending her parenting time by communicating with AZ, which is what led to the January 11, 2023 "mental health episode." Defendant alleged he was ensuring AZ received necessary treatment.

On January 13, 2023, the trial court entered an "Order Re: Emergency Motion", in relevant part, holding that plaintiff failed to "demonstrate by specific facts set forth in an affidavit or verified pleading that irreparable injury, loss, or damage will result from the delay required to effect notice or that notice itself will precipitate adverse action before an order can be issued." The order also stated that the court would "entertain oral argument" on plaintiff's motion on January 18, 2023. The trial court further found it was in AZ's best interests to temporarily suspend plaintiff's parenting time, "including no phone, email, or third party contact," pending oral argument.

On January 18, 2023, the trial court heard oral arguments on plaintiff's motions. It was noted by the GAL and defendant that medical professionals believed AZ's mental health issues improved after plaintiff's parenting time and contact with AZ was suspended.[10] Plaintiff vehemently objected to her parenting time continuing to be suspended, noting it would change the established custodial environment. Plaintiff argued "she would be entitled to a prompt evidentiary hearing on that" so the trial court could "make findings." After hearing the parties' arguments and the GAL's recommendation that plaintiff's parenting time be suspended, the trial court adopted the GAL's recommendation. The trial court stated: "This is not permanent, mom, it's temporary. . . ."[11] When asked about the order of reference contained in the January 11, 2023 order, the trial court noted an evidentiary hearing concerning custody was not yet necessary because a change of custody had not occurred. According to the trial court, doing a review hearing with the referee was the preferred course of action:

> Well, I think it should be a review and like what's the evidentiary hearing going to be? There's no change of custody right now. You know you may have the psychological and have these reviews and whatever's going on in your life be like this wasn't serving our child….I mean, right. Like what's the evidentiary hearing

---

[10] Per the GAL, after speaking with social workers and nurse practitioners at both Pine Rest and St Joseph's where AZ was in-patient, [t]he general consensus from those professionals was that [AZ] was more agitated and not doing as well when he was having contact, whether in person or on phone…with his mother. and when there was no contact with mom, [AZ] was doing well." He also "understood that these acts of trying to commit suicide would not get him any closer to spending time with his mom and he was fine to go with his dad." The GAL also noted that Dr. Donnelly's therapist had concerns "about mom's influence on [AZ] and some coaching concerns.

[11] Reference to plaintiff's failure to complete a psychological with Dr. Parks led the trial court to state it needed to know whether plaintiff was engaging in therapy; she replied that Ann Holland was her therapist, but she did not state whether she completed the psychological.

-4-

going to be on? The review could go smashingly well and mom you could agree to certain things, dad you could agree to certain things and if not then I guess you're going to have your—file a new motion and we'll get you an evidentiary hearing ASAP.

When reminded that there was already an order for an evidentiary hearing to cover custody and parenting time, the court responded, "[w]ell if you already have an order then you already have an order. I just don't have that order in front of me."

On January 23, 2023, the trial court signed an order, which was not entered into the register of actions until January 24, 2023. The trial court ruled, in relevant part: "Plaintiff-mother's parenting time should continue to be suspended and [she shall] have no contact with the minor child until further order of the court. A review hearing with the Friend of the Court shall be scheduled for 5-6 weeks out." The claim of appeal in Docket No. 364921 followed. Thereafter, in Docket No. 365078, plaintiff filed a delayed application for leave to appeal (1) the January 24, 2023 order; (2) the January 13, 2023 order; (3) the January 11, 2023 order; and (4) the December 19, 2022 order. We granted leave and consolidated the matters. *Barreta v Zhitkov*, unpublished order of the Court of Appeals, entered March 30, 2022 (Docket No. 365078).

## II. STANDARDS OF REVIEW

"This Court . . . reviews de novo questions of constitutional law." *Bailey v Antrim County*, 341 Mich App 411, 420; ___ NW2d ___ (2022) (alteration in original; quotation marks and citation omitted). This Court reviews "de novo a trial court's interpretation and application of a statute," *id*. at 421, and court rules, *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). With respect to a custody decision, this Court applies:

> three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"Similarly, [o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of

discretion, or the court made a clear legal error on a major issue." *Stoudemire v Thomas*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 360441) (2022); slip op at 4 (alteration in original; quotation marks and citation omitted).

## III. ANALYSIS

## A. CHANGE OF CUSTODY

Plaintiff first argues the trial court committed clear legal error by changing physical custody[12] of AZ without holding an evidentiary hearing and making factual findings and legal determinations concerning proper cause or a change of circumstances, AZ's established custodial environment, the proper standard of proof, and AZ's best interests. We agree.

The Child Custody Act (CCA), MCL 722.21 *et seq.*, "governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021). The CCA "is equitable in nature and must be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved." *Id*. (quotation marks and citation omitted). The CCA promotes the best interests of the child by ensuring a stable environment free of unnecessary and disruptive custodial modifications. *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017). Indeed, "[c]onstant changes in a child's physical custody can wreak havoc on the child's stability, as can other orders that may significantly affect the child's best interests." *Id*. To that end, the CCA limits a court's power to modify previous judgments or orders regarding custody and parenting time. *Id*. at 78-79.

As relevant to this appeal, MCL 722.27 states:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> \* \* \*
>
> (c) . . . [M]odify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age.

---

[12] Plaintiff argues in a cursory manner that legal custody was impacted by the trial court's orders. Parties "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims, nor may [parties] give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Because plaintiff has failed to address the merits of this argument in a detailed manner, the argument is abandoned and need not be considered. See *id*.

The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. . . .

"[T]he Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014), superseded in part by statute as stated *In re AGD*, 327 Mich App 332, 342; 933 NW2d 751 (2019). "Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013) (quotation marks omitted).

Before modifying a custody order or a parenting time order, a court must first consider whether the moving party has demonstrated by a preponderance of the evidence a change of circumstances or proper cause. *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). See also *Stoudemire*, ___ Mich App at ___; slip op at 4. The next step in considering a motion for a custodial or parenting time change requires the court to consider the child's established custodial environment. "[W]hether a custodial environment has been established is an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). An established custodial environment is one in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

Whether an established custodial environment exists is a pivotal question, because it determines the applicable standard of proof. Specifically,

[a] proposed change [in parenting time] that would not alter the child's established custodial environment requires only an appropriate ground for taking legal action, whereas a proposed change that would alter the child's custodial environment requires a higher and more exacting finding of appropriate grounds that have or could have a significant effect on the child's life.

The nature of the change also affects the standard by which it must be shown that the change is in the child's best interests. A mere adjustment in parenting time requires the movant to prove by a preponderance of the evidence that the change is in the best interests of the child pursuant to [*Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010)]. However, if a purported adjustment in parenting time would alter the child's established custodial environment, that adjustment is effectively a change in custody, mandating application of the higher clear and convincing evidence standard under [*Vodvarka*, 259 Mich App at 509]. [*Stoudemire*, ___ Mich App at ___; slip op at 4-5 (quotation marks and citations omitted).]

When determining whether a proposed change to parenting time would alter an established custodial environment, an important consideration is to what extent the proposed change will decrease a parent's time with the child. *Lieberman*, 319 Mich App at 89-90. "[M]inor

modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, [but] significant changes do." *Id.* (citations omitted). Once the trial court finds proper cause or a change of circumstances, and assigns the moving party the proper burden of proof, the court must consider the best interests of the child:

> Both the statutory best interest factors in the [CCA], MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a([7]), are relevant to parenting time decisions. Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues. [*Shade*, 291 Mich App at 31-32.]

Before the trial court in this case entered the challenged orders, the parties shared joint physical and legal custody of AZ. The parties were granted "week on/week off parenting time." The challenged orders had the legal effect of modifying not only plaintiff's parenting time, but also her joint physical custody of AZ. Indeed, plaintiff's parenting time was either very limited or contact with AZ was prohibited. See *Grange Ins Co of Mich*, 494 Mich at 511. Although the trial court characterized its December 19, 2022, January 13, 2023, and January 24, 2023 decisions as merely *temporarily suspending* plaintiff's parenting time, how the parties and the trial court characterize an issue concerning custody or parenting time is not dispositive. *Lieberman*, 319 Mich App at 77 n 4. Rather, we examine whether the changes would result in a modification of parenting time or custody. *Id.* at 77 n 4, 85 n 7. In this case, it is clear the orders had the legal effect of modifying not only plaintiff's parenting time, but also her joint physical custody of AZ. Defendant was essentially granted sole physical custody by virtue of the orders without the court first holding an evidentiary hearing. *Schlender v Schlender*, 235 Mich App 230, 233; 596 NW2d 643 (1999).

Even so, at no point did the trial court determine whether: (1) proper cause or a change of circumstances had arisen to warrant revisiting the issues of parenting time and physical custody as established in the judgment of divorce, (2) an established custodial environment existed and whether any potential modifications to parenting time or physical custody would disrupt that established custodial environment, and (3) the evidence supported a finding that any proposed modification was in AZ's best interests. See MCL 722.27(1)(c). The trial court was required to consider these issues and make factual findings before modifying parenting time and effectively changing physical custody. The trial court committed clear legal error by failing to do so. *Stoudemire*, ___ Mich App ___, slip op at 4, 6-7.

With respect to plaintiff's arguments the trial court improperly failed to hold an evidentiary hearing in violation of her due-process rights, "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). This right may be withdrawn only when clear and convincing record evidence demonstrates that parenting time "would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). As our Supreme Court acknowledged in *Hunter v Hunter*, 484 Mich 247, 269; 771 NW2d 694 (2009), which also arose from a child custody dispute, "where the parental interest is most in jeopardy, due process concerns are most heightened." Because the liberty interests at stake when a court seeks to limit or deny parenting time or custody are powerful, "to satisfy constitutional due process standards, the state must provide the parents with fundamentally fair procedures." *Id.* at 257.

Our Legislature has enacted a statutory framework designed to protect parents' due-process rights in custody disputes. As already discussed, MCL 722.27(1)(c) empowers a trial court to "modify or amend" previous judgments or orders conditioned on a showing of proper cause or changed circumstances. Our Supreme Court has described as "critical" that courts "carefully and fully comply with the requirements of MCL 722.27(1)(c) before entering an order that alters a child's established custodial environment." *Daly v Ward*, 501 Mich 897, 898; 901 NW2d 897 (2017).[13] In *Daly*, our Supreme Court emphasized that, while MCL 722.27a(12) permits a trial court to enter an ex parte interim order concerning parenting time, a child's established custodial environment should not be changed absent "clear and convincing evidence" that doing so "is in the best interests of the child." *Id*. at 897-898. The Supreme Court highlighted "[t]his heightened evidentiary burden for altering a child's established custodial environment recognizes the commonsense proposition that a child benefits from the permanence and stability of an established custodial environment, and therefore that such an environment should not lightly be altered." *Id*. at 898. Although a trial court may enter an order upsetting a child's established custodial environment ex parte, it may not do so "without first making the findings required by MCL 722.27(1)(c)." *Id*.

Although *Daly* was issued in 2017, we emphasized two decades ago that "it is improper for a trial judge to decide the issue of custody on the pleadings and the report of the friend of the court when no evidentiary hearing was held." *Schlender v Schlender*, 235 Mich App at 233. "A hearing is required before custody can be changed on even a temporary basis." *Id*. We acknowledge, in determining the existence of proper cause or a change of circumstances, the trial court is not necessarily required to conduct an evidentiary hearing. See *Marik v Marik*, 325 Mich App 353, 363; 925 NW2d 885 (2018). If a trial court's decision to modify parenting time will alter a child's custody, even on a temporary basis, a hearing to determine the child's best interests must be conducted. See *Schlender*, 235 Mich App at 233. See also *Johnson v Johnson*, 329 Mich App 110, 131; 940 NW2d 807 (2019) (holding "even temporary changes in custody require an evidentiary hearing at some point"); *Grew v Knox*, 265 Mich App 333, 336; 694 NW2d 772 (2005) ("An evidentiary hearing is mandated before custody can be modified, even on a temporary basis.").

Indeed, in *Pluta v Pluta*, 165 Mich App 55, 60; 418 NW2d 400 (1987), we held that a trial court should not be permitted "to circumvent and frustrate the purpose of the law by issuing an ex parte order changing custody without any notice to the custodial parent or a hearing on the issue whether clear and convincing evidence was presented that a change of custody was in the child's best interest." In *Mann v Mann*, 190 Mich App 526; 532-533; 476 NW2d 439 (1991), this Court reaffirmed the holding in *Pluta* and held that a hearing must be conducted when determining whether a temporary change of custody is appropriate or necessary. Nevertheless, the *Mann* Court recognized that:

---

[13] "An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001).

situations might arise in which an immediate change of custody is necessary or compelled for the best interests of the child pending a hearing with regard to a motion for a permanent change of custody. Such a determination, however, can only be made after the court has considered facts established by admissible evidence—whether by affidavits, live testimony, documents, or otherwise. [*Id*. at 533 (citations omitted).]

As noted by defendant, MCR 3.207(A) permits trial courts to issue "ex parte . . . orders with regard to *any matter* within its jurisdiction" (emphasis added). MCR 3.207(B)(1) states:

> Pending the entry of a temporary order, the court may enter an ex parte order if the court is satisfied by specific facts set forth in an affidavit or verified pleading that irreparable injury, loss, or damage will result from the delay required to effect notice, or that notice itself will precipitate adverse action before an order can be issued.

This rule applies to child custody proceedings. *Johnson*, 329 Mich App at 129. Thus, MCR 3.207(B) essentially permits a trial court in a domestic-relations matter to issue an ex parte order regarding child custody if the court is satisfied that there is a threat of imminent harm. But "ex parte orders issued under MCR 3.207 that affect child custody must comply with specific notice requirements." *Id*. at 130. MCR 3.207(B)(5) and (6) mandate certain language concerning notice be contained in ex parte orders.

In this case, the suspension of plaintiff's parenting time was spurred by defendant's December 15, 2022 verified motion. The motion alleged plaintiff had been suffering from mental health issues and engaging in parental alienation for eight months. Thus, a majority of the conditions had existed for a period of time. Defendant's previous attempts to have plaintiff's parenting time suspended as a result of these conditions were unsuccessful. While the verified motion supports AZ missed school while in plaintiff's care, there is no indication AZ would suffer from the type of immediate harm that could not be prevented in the absence of an ex parte order. After defendant filed the December 15, 2022 motion, the trial court did not take evidence at hearings. Rather, the trial court simply heard counsel's oral arguments and listened to the GAL's recommendations. Additionally, the notice format described in MCR 3.207(B)(5) and (6) are absent from the orders. Therefore, even if the orders had been supported by admissible evidence, they nonetheless failed to comply with the notice requirements under MCR 3.207(B)(5) and (6).

In sum, because the trial court's decision to suspend plaintiff's parenting time had the effect of actually modifying the award of joint physical custody in the consent judgment of divorce, and because MCR 3.207 did not apply, an evidentiary hearing was required. Given the circumstances in this case, we cannot conclude the trial court's errors were harmless. See *O'Brien v D'Annunzio*, 507 Mich 976, 977; 959 NW2d 713 (2021).

## B. SUSPENSION OF PARENTING TIME

Next, plaintiff argues the trial court committed clear legal error by suspending her parenting time in the December 19, 2022, January 13, 2023, and January 24, 2023 orders without first holding an evidentiary hearing and making the requisite findings of fact. We agree.

The CCA "recognizes that parenting time is not merely a right of the parent, but also a right of a child and thus an obligation of the parent." *Delamielleure v Belote*, 267 Mich App 337, 340; 704 NW2d 746 (2005). MCL 722.27a governs parenting time. It states, in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

> (2) If the parents of a child agree on parenting time terms, the court shall order the parenting time terms unless the court determines on the record by clear and convincing evidence that the parenting time terms are not in the best interests of the child.

> (3) A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health.

The trial court suspended plaintiff's parenting time in the December 19, 2022, January 13, 2023, and January 24, 2023 orders. In doing so, the trial court failed to make the requisite findings regarding the effect of parenting time with plaintiff on AZ's physical, mental, or emotional well-being. Indeed, based on the record before this Court, there was no admissible evidence of endangerment that could be attributed solely to plaintiff. Defendant's allegations and the recommendations of the GAL and the FOC representative were the only basis for the trial court's decision. As already repeatedly stated, the trial court did not hold an evidentiary hearing. Given the lack of admissible evidence, the trial court was unable to make findings of fact with respect to the effect that plaintiff's parenting time had on AZ's physical, mental, or emotional health. See MCL 722.27a(3). The trial court's failure to properly address these factors amounted to clear legal error. *Merecki,* 336 Mich App at 644-645. Given the circumstances of this case, it cannot be said the trial court's error was harmless. See MCR 2.613.[14]

---

[14] Defendant argues that plaintiff cannot claim error on appeal because she requested the trial court suspend defendant's parenting time on several occasions. Plaintiff did not consent or acquiesce to the trial court changing parenting time or custody without holding an evidentiary hearing, however. Indeed, plaintiff repeatedly challenged the trial court's December 2022 and January 2023 orders and requested an evidentiary hearing at the January 18, 2023 hearing. Cf. *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989); *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002). Even if plaintiff consented or acquiesced to the trial court changing parenting time without holding an evidentiary hearing, "the parties to a civil matter cannot by their mere agreement supersede procedures and conditions set forth in statutes or court rules." *In re Estate of Ford*, 206 Mich App 705, 708; 522 NW2d 729 (1994). Quite simply, the trial court was required to determine whether it was in AZ's best interests to suspend plaintiff's

## C. REFERRAL OF THE MATTER TO THE FOC FOR AN EVIDENTIARY HEARING

Plaintiff argues the trial court improperly referred the matter to the FOC in the January 11, 2023 order in violation of MCL 552.505(1)(g). Even assuming plaintiff is correct, we fail to see how she was aggrieved. Indeed, there is no indication an order of reference was entered, and plaintiff acknowledges this on appeal. Additionally, there is no indication a recommendation concerning proper cause or a change of circumstances was made by a FOC representative or that the trial court relied upon it. Cf. *Bowling v McCarrick*, 318 Mich App 568, 571-572; 899 NW2d 808 (2016). Thus, even if the trial court erred, the error was harmless. See MCR 2.613(A).

## D. DEFENDANT'S MOOTNESS ARGUMENTS

Defendant argues plaintiff's arguments on appeal are moot because an evidentiary hearing took place before the referee on April 3, 2023.[15] We disagree the issues are moot.

"Michigan Courts exist to decide actual bases and controversies. . . . A matter is moot if [a] Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Bailey*, 341 Mich App at 419 (alterations in original; quotation marks and citation omitted). Importantly, we will generally not review moot issues, *Attorney General v Mich Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005), because reviewing "a moot question would be a purposeless proceeding," *Stern v Stern*, 327 Mich 531, 534; 42 NW2d 737 (1950) (quotation marks and citation omitted).

The trial court ruled in the January 24, 2023 order that a review hearing would be held five or six weeks from that date. It appears the hearing was not held until April 3, 2023. After the hearing, the referee prepared a recommendation that plaintiff be granted supervised parenting time once each week. The referee's recommendation further stated:

> This order is granted after a Referee Hearing by the Office of the Friend of the Court after both parties having had an opportunity to present evidence regarding the best interests of the minor child. This order was recommended by the Referee for the reasons stated on the record after considering the best interest factors under MCL 722.23, 722.27a(7), and the report and recommendation of the GAL appointed to this case.

While defendant argues plaintiff received an evidentiary hearing, there is no indication that the referee considered whether proper cause or a change of circumstances existed, which is a threshold inquiry when considering a change in custody or parenting time. See *Stoudemire*, ___ Mich App at ___; slip op at 4. There is also no indication that the referee considered the child's

---

parenting time, and it did not do so. See MCL 722.27a(1) and (3). Therefore, defendant's argument plaintiff is not permitted to challenge the trial court's rulings because she also sought to suspend defendant's parenting time is without legal merit.

[15] Another hearing was scheduled to be held before the referee on May 23, 2023. However, defendant appears to acknowledge the hearing was adjourned.

established custodial environment, which is necessary to determine the proper burden of proof relating to the best-interest factors. See *id*. at ___; slip op 4-5. Based on the record currently before this Court, the issues raised on appeal are not moot. Indeed, it is necessary to remand to the trial court so an evidentiary hearing can be held in compliance with the CCA and plaintiff's due process rights and so the appropriate findings of fact can be made.[16]

## IV. CONCLUSION

For the reasons stated, we vacate the December 16, 2022 order, the December 19, 2022 order, the January 11, 2023 order, the January 13, 2023 order, and the January 24, 2023 order and remand for completion of the now-ongoing evidentiary hearings on custody and parenting time. Pending the outcome of those hearings, we decline plaintiff's request to immediately restore her custodial rights, and we instead leave intact the June 1, 2023 order regarding parenting time.[17] Imposing an abrupt change on AZ without first requiring the trial court to hold and complete the evidentiary hearing would not advance the Legislature's goal of minimizing unwarranted and disruptive changes in AZ's custody. See *Fletcher v Fletcher* 447 Mich 871, 889; 526 NW2d 889 (1994). Ordering a change in custody without being apprised of the current circumstances would be imprudent and could potentially be contrary AZ best interests. *Id.* It is in AZ's best interests for the trial court to expedite its consideration and resolution of this case. The trial court must first decide whether proper cause or a change of circumstances has been established. If the trial court determines proper cause or a change of circumstances has been established by a preponderance of the evidence, the trial court must next consider: (1) the existence of an established custodial environment, (2) the appropriate burden of proof, and (3) AZ's best interests according to either the *Vodvarka* or *Shade* legal framework. See *Lieberman*, 319 Mich App at 81, 83-84. See also *Marik*, 325 Mich App at 370. The trial court shall consider AZ's present situation when determining whether an established custodial environment exists on remand. See *Fletcher*, 447 Mich at 889. When deciding parenting time, the trial court must comply with the CCA and make the requisite findings of fact.

We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[16] Counsel represented at oral argument that evidentiary hearings were held, albeit belatedly, on June 26, June 27, June 29, and July 14, 2023, that another hearing has been set for August 22, 2023, and that additional dates may be requested. Counsel also stated that the trial court had directed the parties to file written closing arguments following the conclusion of the evidentiary hearings.

[17] The trial court's June 1, 2023 order awarded plaintiff one weekly supervised parenting time session.